Good morning, Your Honor. My name is Paul Ulrich. I'm counsel for Appellants Faber and Meddy. My co-counsel is Pamela Peterson. There are three basic issues involved in this appeal. The first is whether plaintiffs ever satisfied the jurisdictional threshold for claiming relief under Section 14A of the 1934 Securities Act. It's our position as to that, that the plaintiffs simply never presented any evidence that that threshold had been exceeded, and that, therefore, they did not have an implied right of action. And when you're speaking threshold, you're talking about the ten-person threshold? More than – soliciting more than ten persons as a threshold. The second point is that, despite the district judge's findings, there simply was no serious question about this, whether more than ten people had been solicited, could easily have been determined, there was time for discovery, they could have been asked, they were – no evidence was presented that there were. Well, I'm actually puzzled by this time for discovery business. The time between the issuing of the TRO and the hearing on the preliminary injunction, which was then later extended, but it was about two weeks over the Christmas, New Year's holidays. And I'm a little puzzled as to what time was available for – and what opportunities were available for discovery. The TRO was entered in December, and then the TRO was extended several times during January, and there was not a hearing until February. So there was a period of more than two or three weeks. So I see. So the – and what discovery was undertaken during the period between the TRO? I don't believe any – none. These shareholders were not – were not deposed. And the evidence ultimately was Mr. Parent's testimony that they had not been solicited, and then there were arguments that there might be some question or doubt about that, but there was no – Was there attempt to do discovery during this period? I don't believe so, Your Honor. I'm not aware of any. Was there anything that impeded discovery during this period? No. No. Was this a period of voluntary disclosure during which your – which the defendants were going to be required to provide things? Is this – is there – is this district a voluntary disclosure district? There is a – it's a disclosure district, yes. Right. But there is – there's no issue about why or why not this wasn't done. It simply wasn't done. And the plaintiffs had the burden of the other party did not seek to do discovery. That's our understanding. Didn't ask leave of the court to do something of that nature. Right. There was no – there was no reason why these people could not have been deposed. They were a relatively small number. They were in communication. They were available. And this was – and there were evidentiary – was testimony taken? There was an opportunity, yes. There was an evidentiary hearing. And the plaintiffs simply didn't present evidence that these people had been solicited. And who testified at the hearing? Mr. Parent was the – was the – for the defendants who said that they were not. And that's – and that's the status of the record. So that on that basis, then, the third point is that – no, first, that there – that there was no serious question. The plaintiffs simply failed to satisfy their burden of proof. And there was no basis, then, no legal basis for the broad injunction that was entered which allowed this – these transactions to go forward. What was the factual finding that the court made to support the issuance of the injunction based on 14? He found that it was – it was not probable that there had been a solicitation in violation of 14d – 14a. And the 13d – 13d, the disclosure, there was no – that was a – there was a mention of that in passing. He mentioned that in passing. But there was never any argument about that and no evidence about that. So my understanding is that nothing was submitted in the briefs or argued about 13. 13d. There was evidence in the record that was submitted later on that there was no – that – first, that all of the disclosure requirements under 13d had been met and that there was no agreement among the shareholders that might have required any further disclosure. There were emails that were submitted by parents, and again, supporting the later – the motion that there was no agreement among the shareholders and that the – all that had happened was that they had simply given consent on this one transaction because they believed that the transaction was – was wrong in relation to the company. But the district court made no finding on 13d to support its issuance of the CRO. No. No. He simply referred to an allegation in the complaint of a 13d, but there was no evidence, no argument, no finding. There's no finding of any solicitation of more than 10. And what is said in the order is that there is a serious question about that. So you went to the alternative test, a serious alternative test. But that's reviewable by this court de novo, and you have to look at, well, what is the issue that there is this serious question about? And what it – all that it's about is the number of shareholders who were solicited. Was that one of the three issues that you were going to outline for us? That's the – that's the primary – that's the first one, yes. Well, you were talking about jurisdiction under 14, and then you had two other issues in that. Right. So one is the serious question, and the other is the scope of the injunction. Right. Well, before we get any further along, I'll just read to you from the order, which I frankly find a little puzzling, and I'm now on – it's page 9 of the order, it's ER-296, it's what we've been talking about. There are two sentences in which the district court writes that the court has considered the testimony and evidence before it and has determined on this record that plaintiffs have arguably not shown a probability that defendants violated Section 14A. However, unresolved issues with respect to authority to vote certain shares and further discovery could be determinative of this issue. Further discovery, what are we talking about? Or rather, I mean, I'm asking you to read the judge's mind, but I'm puzzled as to what further discovery may be contemplated, the procedures and so on. This is – this is somewhat opaque to me. Our – and it is to us, too. The – this goes back to what I said before. There was full opportunity to depose these shareholders as to whether they were solicited or when or how. There was simply no basis for saying that there was an unresolved issue. It simply got to the point where the plaintiffs had the burden of proof as to whether more than 10 shareholders had been solicited or not. And they did not prove that that had occurred. And to say that further discovery could be determined, I mean, that – that goes to whether it's a part of the serious question issue. That's not a serious question as to whether further discovery might be determinative. If the judge thought that there should be more discovery, then I would submit the proper thing to do would be simply to continue the hearing and allow more time for discovery. But that – that isn't what was done. So that there's – there's no factual basis for that assertion. And certainly there's none given as to what – what the judge had in mind. What was said by counsel for Faber was that there might be some question about whether Rufus Pearl, who was the shareholder who voted for the – the Jubilee investment shares, had authority. But that was simply said as a question. And the fact is that the plaintiffs had admitted in the state court before and in the district court that the vote was in full compliance with Florida law. And the district court found as a part of its order that the – the shares had been voted in compliance with Florida law. So that there was no issue, really, on the record as to whether a majority of the shares had been voted or not. That – that had been established. I think – So the – so when the district judge says in the second of these two sentences that I read to you, authority to vote certain shares, that's a reference to whether or not Harry and David also had to be on board with respect to voting the shares in the Jubilee investment – I believe – I believe that's what he's – again, reading his mind, I believe that's what he must have been referring to. But, again, the – the evidence was that – that Rufus Pearl did vote the shares. The plaintiffs had the burden of proving that – that other people – Harry and David also had to participate in that. That was never proven, and – and there was no – no real issue about that. But I think another way to look at that is that even if you say – even if you were to agree that, hypothetically, Harry and David Pearl had to vote at – has to vote the – had to participate in voting the Jubilee shares, there still is not 10 shareholders who – who were solicited, because the – the – there were only – there were only four. Not counting them, there were four. There was Judith Parent, Mr. Parent's wife, Ronald Haswell, Rufus Pearl, and George Polos. And if you say, well, maybe there's a question about whether Harry and David Pearl had to be solicited, that still gets you up to six, which is not 10. And then the other argument that's made is that – that these – that there were two other directors, Gash and Nettie, who must have been solicited, but there's no evidence that they were. Mr. Parent's testimony, uncontroverted, was that they were not solicited before these consent resolutions were issued. But even if you count them, you're only up to eight. And so look – And then we've got these other letters from Plummer, Grice, Solari, Van Wielden. Maybe they were solicited, maybe they weren't. Well, we have – the only evidence of that is that the letters themselves, I guess. Well, and we have Mr. Parent's testimony in the record that he did not solicit them before the 9th of December, that these – I have to say, Mr. Parent's testimony in various affidavits and declarations and depositions seems to wander around a little bit. I'll say it that way. But there's no finding – there's no finding based on lack of credibility as far as he's concerned. Again, he is testifying that he had no contact with these other five shareholders until after the December 9th consent resolutions. That's his testimony. So, Rick, this may be neither here nor there, but to satisfy my curiosity, this preliminary injunction was entered 11 months ago. Has the case been stayed then? Has it been – Stayed in the district court. Is it ongoing? Well, the case – What stage does the case stand now in the district court? There's been – nothing has happened. Well, that's my – so essentially it's been – well, why not? Is it a choice of the parties? Does the district court enter a stay or what? This case could have been fully resolved by now, it seems to me. It hasn't been resolved. It's just a question. My question is why not? Because I – maybe you would need to ask the Plaintiffs' counsel. From our perspective, what happened was that the harm was done. The transaction was allowed to go forward. The shares were exchanged and so on. All of that happened. And it's – from our perspective, it's up to the plaintiffs to move the case forward. There's been nothing – nothing – the case was about, really, we believe, whether these – this transaction should go forward or not. And when the Court ruled that it could, then there was nothing more to do in the case. I guess the question is, you know, what should this Court do to try to correct the situation? Well, can we – when you say it's already been done, is it your position we can still undo it? I – that would take a combination of things to do. And I'd like to address that. I think, number one, what this Court could do would be to say that the injunction was improperly entered. And the resolutions – the consent resolutions were valid on December 9th, 2004, which were to remove the directors and to prevent – to rescind the transaction. Now, what needs to happen now, because there has been change in the Board of Directors, there needs to be an election of new Board members. There needs to be further action taken with respect to the transactions. I think that's beyond what this Court can do because there's no real basis for this Court to do that. There may well need to be further district court proceedings. But the key here and why we're here – and there's no argument that this is moot. There's been no suggestion by either side that this is moot. And that the Court needs to rule that there was no legal or factual basis for entering the injunction that the district court did and that that needs to be unwound and the case needs to be remanded back, hopefully, to another district judge because it's apparent, I think, that Judge Carroll was prejudiced against Mr. Parent for whatever reason and that may well have colored his thinking. And it needs to get back and sorted out. Can I ask you this about the Merriman investors? They were initially enjoined from converting their debt into stock. The district judge then modified his injunction so that they were no longer enjoined from so doing. Have the Merriman investors done anything with respect to the convertibility of that debt into shares? It's my understanding – and this is not in the record – but this is my understanding that they have gone forward. They have. They did convert their stock to debentures and then converted it back again as the result. And this is, I think, in public filings. The number of shares in the company has increased significantly from like 198 million to 320-some million. And there has been another shareholders meeting based on those shares, which we believe is illegal because the shares were not properly issued. So the thing did go on and that's, I think, part of what would need to be determined on remand is what could be done as a practical matter either in terms of rescission or damages. Is part of what you want for these shares issued to the Merriman Group to be recalled and the money returned or what? Well, they had shares initially, which they paid $10 million for. They were shareholders for $10 million. And the initial status quo would be to, if possible, to return those shares to them, to unwind the conversion and the reissuance of the new shares. There's no money that would need to be paid to them because they started out as equity investors. I would like to reserve – I see my time is getting down. I would like to reserve time for reply. Not to worry. We'll make sure everybody says what he or she needs to say. But I want to follow up on this Merriman Investors a little bit just to make sure I understand where we are. And I also understand that this is post the time of appeal and outside the record, but I'm trying to figure this out. But the Merriman Investors, while they have converted their debt into stock, they've not sold the stock? Do we know that? Now, that I don't know that we know, really. We know that they converted to debentures and then reconverted back to their stock. But, you know, I think in terms of if you're concerned about third-party good-faith purchasers, the fact is this litigation has been a record and disclosed and there really couldn't be – The second question, whether they've sold some of the stock or not sold some of the stock, do we know whether the five, Mr. Parent, Ms. Parent, Pearl, Haswell, Poulos, do they still own more than the majority of the shares after the Merriman conversion of the debenture into stock? I don't believe they do because the effect of the stock conversion was to increase the percentage of Merriman from 11 to 40 percent. Right. And so there has been a change of control from the shareholders. At the time of this disputed coup, it was that the five investors owned 50.8 percent. That was at that time. Yeah, yeah. That was undisputed at that time. I assume the Merriman investors are aware of this appeal and what's going on. They aren't parties to this case. Well, they moved to intervene and then – Where, in this court or the district court? In the district court, and then that was withdrawn. I think the motion was denied. They are fully aware of this. The motion was denied to intervene? Yeah, I believe that's correct. But they have an appeal. They filed a notice of appeal and then withdrew it. So they are not – they are certainly aware of this. But the way you're talking, it seems to me their interest would be affected, could be affected by the outcome of this appeal. It seems like they're almost a necessary party. All I can say is it's my understanding that their motion to intervene was denied and they withdrew their notice of appeal, which is their choice. It's not – they could have been here, Your Honor. I guess if they wanted to be, but they're certainly aware of this. Well, and I do want to reserve some time. I think we have most of your argument at hand. Let's hear from the other side and we'll make sure you get a chance to respond. All right. Thank you. Thank you. May it please the Court. I'm Joel Hoxie on behalf of the plaintiffs Appellees Robert Faber and Les Cahan. In response to several of Your Honor's questions, plaintiffs have not been active in the case since the appeal to this court was initiated because the injunctive relief that we were securing all along had the effect of reinstating the original board of directors and all limitations on that board to govern Gold Spring in accordance with state and federal law were lifted by Judge Carroll. And since that time, the court can take judicial notice based primarily on a November 14, 2005, SEC filing available on Edgar, quarterly filing on Form 10-Q, that on October 3, a duly noticed shareholders meeting went out, proxy statements went out, financial statements went out to all shareholders. And on October 26, 2005, a shareholders meeting was held and a slate of new directors was nominated, stood for election, and the majority vote on that was that a new slate of five directors replacing the prior nine director board was elected. Now, Mr. Parent participated in those proceedings. He took no action to challenge that shareholders meeting. He took no action to challenge the election. He voted in the election and in opposition to the slate, but he was in the minority. The Merriman chairs were voted at that meeting? Yes, they were. There was a question about whether the Merriman investors had moved to intervene. The sequence was that initially they were not intervenors at the district court level because initially the district court's TRO ruling that came out on December 23 of 2004 maintained the status quo. It didn't reinstate the old board, but it put severe limitations on what Mr. Parent and his cohorts could do pending the evidentiary hearing, which took place on January 5, right after the Christmas holidays. There were then more evidentiary submissions to the court. At that evidentiary hearing, two people testified. Mr. Parent testified and was interrogated by counsel for both parties as well as the court, and Robert Faber, the plaintiff and the ousted CEO, also gave live testimony and was examined by both counsel and by the court. Were the two witnesses at the election of the parties or by limitation by the court? Were you limited to those two people? No, at that proceeding we were not. We also submitted affidavits on behalf of others. The defendants also submitted affidavits. There were also documentary exhibits, quite a few actually, that were submitted, and there were no objections to the admissibility of any of the documents by either side, so those were deemed admitted by the court. It seems to me that you've got a failure of proof problem as to your 14A soliciting of more than 10 people, given the evidence submitted at the hearing in front of the district court, and I'm not saying this because of my reading of the evidence. I'm just reading district court's order. That strikes me as he's saying there's a failure of proof. Tell me what discovery you undertook, sought to undertook, discovery you couldn't undertake. I mean, you didn't present much evidence. Why? Well, we felt we had made the showing we needed to make for purposes of the preliminary injunction standard, the serious questions and balances. But I'm interested specifically on the 10 people threshold. Yes, absolutely. You presented enough evidence on the 10 people? Absolutely. Well, the district judge disagreed with you, obviously. Well, no. I think you're the real thing. I think the fair reading of his order is that what he said, because he was going to the other formulation under the Ninth Circuit standard for preliminary injunctions, he said that arguably we didn't show a probability that more than 10 persons were violated. He says that defendants violated Section 14A, but I think we're down to whether 10 persons, more than 10 persons were solicited. He says, though, that that's not a determinative. I think the next sentence, then, can fairly be read to say that's not his final determination on that issue. He then goes on on the next page and, invoking the Gilder v. PGA Tour case out of this court, talks about the serious questions and the balance of the hardships tipping most decidedly in plaintiff's favor, which the serious questions went to what point? Serious question went to whether there was a fair chance of success for the plaintiff to show that more than 10 persons were solicited for purposes of 14. Well, he quotes those cases, but he doesn't relate it to this case at all. He didn't say, for instance, there's a serious question on this issue or that issue or anything like that. He just quotes the language from the cases, from Gilder and from Clear Channel. That's all he does. Right. But the evidence in the record, both from the January 5, 2005 hearing and then comments made by the judge at the February 10, 2005 status hearing, this is before he issued his February 15, 2005 order, says that he had concerns about the credibility of Mr. Parent. But he didn't put that in his TRO. He didn't put it in the findings. He did not put that in his February 15 order, but he did comment. Excuse me. Are we supposed to go into the record and find things that favor one side or the other or help the judge or support his decision when he didn't put it in the findings in the first place? I think it was a pronouncement from the bench. I think the Court can look to pronouncements from the judge from the bench at the February 10 status hearing. Was that before or after the TRO was issued? Well, the TRO was issued on December 23, and then he set the evidentiary hearing for January 5. So there was a basically a one-day evidentiary hearing on January 5. And then following that, he extended his TRO on January 14. He extended it again on January 27. A day after he extended the TRO on January 27, the parent group issued a Schedule 14C SEC filing, an informational statement, which the judge later said on the record troubled him because he felt it was misleading. And then he had a status hearing on February 11. At that status hearing on February 11, he also took additional evidence as to whether the parent group was in violation of his TRO, which had been issued on December 23, specifically by issuing the Schedule 14C SEC filing and by taking Gold Spring monies and paying Mr. Parent and his wife. So that was before Judge Carroll as to whether his TRO had been violated. Mr. Parent was not present at that proceeding, and Judge Carroll was not particularly happy about that development. Be that as it may, he then issued his preliminary injunction ruling on February 15, which then prompted the next day the parent group to file an emergency motion to dissolve the preliminary injunction order. That then led to another hearing, and on February 25, the judge denied the emergency motion but did clarify his preliminary injunction by saying that the record date for the shareholders' meeting would be December 8, 2004, which precluded the Merriman investors from being able to vote, which then led to a preliminary injunction that then prompted the Merriman group to move to intervene, and then at a hearing on March 11, and more evidence was coming in based attached to the pleadings by the parties that's in the record. He backed off of his February 25 ruling and said that he was going to vacate that portion of his order that set a record date. He was going to permit the reinstated board to set the record date, and he was... Can I interrupt the narrative here? Speaking for the moment only for myself, as I read the district court's order granting the preliminary injunction, it does not comply with the fact-finding requirements of Rule 52A. You mentioned that there was something else that the judge had said that might supplement this order that he said on the record, I gather in open court. Can you point me to that? I was referring to... He said this sometime in February. I was referring to the February 10, 2005 hearing at excerpts of record pages 314 to 315. Okay. Hang on, and then I'd just like... We can do a little reading together here. Okay. So where does he say things that might bolster the findings of fact, or rather, I think, the almost nonexistent findings of fact that are in the order? Starting at page 17. 17. Line 17. It's ER 315. Okay. I'm with you. 314. Yeah. 314. Okay. Where are you then? What line? Line 17. Line 17. The court. Okay. He tries to make clear that he bears no animus to Mr. Parent in favor of Mr. Faber. He says he's concerned about what happened, how it happened, the difficulty in trying to ascertain issues with respect to solicitations, how all of this happened at 3 o'clock in the morning one day and some other time the other day, and the changing of stories and the changing of dates, all of those kinds of things are of concern to me. And specifically, we can point to the record where they rely totally on Mr. Parent saying, well, Mr. Parent said he didn't solicit more than 10 persons. Can we stick to the last here on this one, stick to the last in the cobbler's sense? That is, I'm interested in what the district judge himself said that might constitute finding a fact that will bolster what he said in his written order. Anything beyond what you've pointed me to here? No, other than other aspects of his February 15 order where I see nothing in here that relates to the question of whether or not 10 or more people have been solicited. No, but the record is sufficient to show that there was a fair chance of success on that issue, which was all that was required as of the date he issued the February 15 order. And we're supposed to decide there's a fair chance of success by our sort of reading the record? Yes, and I have all the record sites. I mean, there's admission that four people were solicited. We know that going in. Rufus, Ron Haswell, George Poulos, Judith Parent. Also, serious questions as to Harry's question. The question is, what's your answer to Judge Fletcher's concern that this order seems to completely be in complete noncompliance with the requirement of Rule 52A that under granting a preliminary injunction, the court has the duty to make findings of fact to support the injunction? Findings of fact are totally lacking. What's your answer to that concern, that he didn't comply with 52A? Well, he does have findings in here. Well, that's what you've been asking about, and you haven't pointed to a single one. Well, he has findings as to the balance of hardships. Well, what about on the 14A issue? He goes to the — I think you can only read this fairly by saying there's a serious question that was raised and a fair chance of success. On what? Does he go in and specifically — He doesn't even relate that to 14A. Before he even gets there, he talks about 13. I understand that. But I think he's bringing it all together. I think you can — a fair reading is, and the deference to be accorded to him on a preliminary injunction ruling is that you can link that back to the 14A issue as well. Why would we defer to him on a TRO or a preliminary injunction ruling? Either he made the findings or he didn't. Either he made the conclusions or he didn't. Either they went to test or they didn't. And my colleagues have already indicated concerns about whether the actual articulation in the order itself meets the standard under 52. And I think I understand your point is that it may not be as great as you would otherwise like if you had written it yourself, but that said, the court, having articulated it, at the minimum or only said there's a fair chance of success as to a 14A question, as I understand your position, if further discovery was done. And I just have difficulty with that because of all the evidence that's been produced. Either it existed at that time or it didn't. And I don't know where he gets the fair chance of success, given all that had gone on at that point by the time in February when he entered the PI. Well, I think the excerpts of the records demonstrate where he could come to that conclusion that there was a fair chance of success. If, hypothetically, what you're saying is that the relief, then, would be to remand for Judge Carroll to make more clear his preliminary injunction finding. But they — Of course. Of course. But because it's a clear — Simply reverse the injunction because it's not supported. Well, I think under the abuse of discretion, clearly erroneous standard that would apply here, I don't think that would be appropriate. Because what you have here is a factual issue entwined in a legal issue of whether 14A2B2 comes into play or not, the 10-person solicitation exception. What do you mean by whether it comes into play? Is there some question as to whether it applies? No, there's no question as to whether it applies, but the issue is whether the takeover group was entitled to that exception from the 14A3 proxy requirements. But intertwined within that is the factual issue to which the standard to review is clearly erroneous. And — but the clearly erroneous standard applies to whether or not a finding is clearly erroneous, and he doesn't make a finding, so you can't apply the standard. Then the remedy, hypothetically, would be to have him clarify that, because there — we can point to evidence in the record before this Court to support the serious question standard. Now, again, speaking only for myself, I'm inclined to find that this injunction is not properly supported and to reverse because of that. The question for me — again, I emphasize speaking only for myself — is whether, in sending it back to the district judge, we leave the preliminary injunction intact until the district judge has another chance to look at it. Why should we or should we not do that, that is to say, leave the preliminary injunction intact until the district judge has another chance to look at it? Well, because I think of his — Of course, I'll let the other side comment on exactly the same question. Sure. I think because of the evidence in the record and in his opinions about the balance of the hardships tipping decidedly in plaintiffs' favor. He — he goes on in his February 15 order about his grave concerns about Mr. Parent his prior conduct of misappropriation of funds and his worry that forcing himself back in and the evidence before him that he was — But, of course, the 14A is a very discreet question. It really does not have anything to do with prior behavior, subsequent behavior. It has to do with was there solicitation of more than ten people, yes or no? Yes. But your inquiry was why should he be given a second chance on clarifying his preliminary injunction, and that is because of the hardships to Gold Spring and what has happened since that time. Well, wait a minute. Gold Spring is a corporation, and the hardships to Gold Spring may be factual in nature because of which management group takes over and what they do with the corporation. How would we know what — and the hardship question here is — may be driven by the concerns he had about Mr. Parent, but that seems to me to be an equal issue. The hardships — this is a shareholder issue, and hardships, it seems to me, go both ways. That is, you say, well, let's keep this group in place because we have some concerns about Parent's misbehavior. I don't see that issue. Well, it's not even this group, because given the fact that the defendants did not formally seek a stay of his injunctive relief, simply filed their appeal, the case law is legion that someone challenging on appeal a preliminary injunction runs the risk that events that take place later may make the relief sought moot. Because of that, shares have been issued, shares have been bought and sold, and the Parent group that tried to take over by cobbling together 50.8 percent of the shares that were then on the books of the transfer agent, that's no longer the case. Their position now is down south of 26 percent. And there's been an annual meeting. Proxy statements have been issued. Let me ask you this, if I may. You said in response to my question at the outset that you thought you'd presented enough evidence at that hearing in early January to convince the district judge that there was a sufficient probability that you could show that more than ten had been solicited. Yes. You still feel that way? Absolutely, and I can vote. No, I'm sorry. In other words, you don't want any more discovery? I mean, you've discovered as much as you want on this question? I think for the preliminary injunction standard, yes. I think we have met that. Okay. So this is not an opportunity for discovery problem. It's a question of whether you put in enough proof there at that hearing in early January. Yes. So you rest on that record? Yes. Okay. No further questions. Thank you. Thank you. Thank you. Response. Well, pick it first of all, just picking up on how much time do I have? As much as we need. I will take as little as possible. All right. This is an important case with some complications, and we'll talk as long as we need to talk. Thank you very much. First of all, with respect to Judge Fletcher's question about the discovery issue, initially the district court allowed unrestricted discovery. We have references in the E.R. In fact, I don't think I need to hear this. I mean, he said he has as much as he wants and he doesn't want any more. That's not an issue. That's not an issue. So Judge Carroll's statement that further discovery might help is really insignificant because there's no more discovery that would help. So you look at the record that's there, and there simply isn't evidence in the record that more than ten people were solicited. I think what has happened here, and in Mr. Hoxie's argument, he has confused two different ideas. One is the facts that are necessary to be proven to establish jurisdiction to begin with, and then the question of likelihood of success on the merits, which might be a sliding scale. But here there was a burden to establish the facts relating to. . . I think we understand that. Let me ask you the question that I asked Mr. Hoxie, and that is, if we were to reverse and to say that Rule 52A was not complied with and that we therefore think the injunction not supported, so we send it back to the district court, why should we or should we not keep the injunction intact until the district judge has another look at it? I think the answer to that is that there was, at the time, by the time of the evidentiary hearing, there was full opportunity for the plaintiffs to present whatever evidence they had, and Mr. Hoxie said they did whatever they thought they needed to do. If the court finds that there's not sufficient evidence in the record to support the injunction, then the injunction should be vacated. That's simply error like any other ruling that's not supported by the evidence. And then the question is, which is. . . See, this sentence is really weird. It says, have arguably not shown a probability. I mean, what's that mean? I think all you can take that to mean is that plaintiffs haven't sustained their burden of proving a violation of 14A. He didn't put it the other way. He didn't find that there was a violation. I believe that, and submit to the court, that to sustain going forward with the injunction, he had to find, based on the evidence in the record, that there was a violation of 14A. What harm would there be if we were to continue the injunction until the district judge had another chance to look at it? Because there's nothing more for him to look at. No, no, I'm not asking that. What harm to your client would there be if we allowed the injunction to be to continue in place until the district judge had another chance to look at it? And after looking at it with a remand from us, he may say, well, you know, I really can't make the finding. Or he could say, I can, and here it is. I mean, I don't know what he's going to do. But if you. . . But if he goes back and says, well, yes, I'm looking at it, I reaffirm my injunction, then we're right back here again because his finding. . . That would be a pretty quick trip, I think. Well, would it be a mandamus? No. But then you've answered the question. Because he can't say, on reflection, I affirm, because there's no evidence in the record to support it. No, no, I did not say that. I'm saying once he goes back and focuses on the record and makes the findings, I don't know what findings he's going to make because he didn't make them. But my point is that on the record, he can't make those findings because there isn't evidence there to. . . That's your argument. And if he did, that would be clearly erroneous. Right. And so there's no point in it. Yeah. So if we were looking at the record to find that it was impossible to make the findings, I guess we could be done with it. We don't. And you vacate the injunction, and then the question is. . . But if we can't make that finding on the record, then it would be clearly erroneous. Or at least we'd like to hear from him first. So he has a chance to persuade us based on his findings. Should we leave the injunction intact pending his doing that? Well, I think the question for the court would be, could an objective district judge reasonably do that based on the record that's there? That's a different question, but I understand. I don't think you want to answer my question. I think the question is, practically, what happens if we reverse and simply remove the preliminary injunction? To say it was wrong and reverse the injunction, what happens next? Well, I think what that would leave in place would be the situation that existed on December 9, 2004. Because the effect of removing the injunction is to say that the resolutions were valid, and there's no question that they were valid and appropriate under Florida law, and there's nothing wrong with them as a matter of corporate law or Florida law. So if you say, then, if the result is that the resolutions that were entered were proper, and there's nothing that impedes the corporation from going forward, then the question becomes, well, what does the corporation do, given whatever water has gone under the bridge since? And what we believe needs to happen is that there, and this Court, I think, could say this as a part of its opinion, that if the injunction is invalid, then the record date should be, for shareholders, should be December 9, 2004, and there shouldn't be recognition given to the conversion and reissuance of shares that were permitted because of the injunction. And then it's a matter back in the district court of deciding how to re-scramble that egg. That's beyond this Court's ability. But certainly, that's where we need to get back to. And I would hope and urge the Court not to send it back to Judge Carroll for further reflection on his order, because that would just perpetuate the problem. And what we have asked for, seriously, is, and I'm recognizing that the Court has discretion to do this, is to send it back to another remand, to a different judge, and start over again with a different judge who doesn't have the mindset that Judge Carroll has. Kennedy. The second time you mentioned that, but you didn't ask that this case be assigned to a different judge in your brief, did you? Yes, we did. You did? As part of our conclusion, we did. We decided a case on that. We did ask that in the brief. Is there a response to that from the other side? I don't recall whether there was a response or not. But you mentioned in your opening brief? Is that right? Yes, at page 58 of our opening brief. All right. Thank you. Okay. Thank both of you for your arguments in this case. The case of Faber v. Parent 05-15665 is now submitted for decision. We are in adjournment until tomorrow morning.
judges: Tashima, W. Fletcher, Shea